UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS, a foreign insurer,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTIAN BECK, et al.,<br><br>    Defendants. | Case No. C22-5565RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This case comes before the Court on Plaintiff American Hallmark Insurance Company of Texas ("Hallmark")'s Motion for Summary Judgment. Dkt. #30. Defendant G.M. Northrup Corporation ("G.M.") has filed an opposition brief and Defendants O'Reilly Automotive Enterprises, LLC and O'Reilly Automotive Stores, Inc. have joined in that opposition. Dkts. #35 and #36. The Court has determined that it can rule without the need of oral argument. For the following reasons, the Court GRANTS Plaintiff's Motion.

## II.   BACKGROUND

This is an insurance coverage dispute. Hallmark asks the Court to determine coverage for underlying claims against G.M. for injuries sustained by pressurized sewage backflow from

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

a damaged sewer line when it erupted from a toilet at the O'Reilly Auto Parts store in Belfair, Washington. The relevant facts are not in dispute. G.M. Northrup, a general contractor, was sued by Christian Beck, Scott Holland, and Danna Holland for failing to properly design, install, identify, address, or document the location of the sewer line on or near the O'Reilly Auto Parts property. *See Christian Beck et al. v. Rhine Demolition LLC, et al.*, Pierce County Superior Court Cause No. 20-2-07117-5 (the "Underlying Lawsuit"). The full allegations need not be discussed for purposes of this Motion.

The construction work was performed in 2013; the injury occurred in 2019. G.M. tendered the Underlying Lawsuit to Plaintiff Hallmark in April of 2022 seeking defense and indemnity as an additional insured under a policy ("Policy") issued to Hallmark's named insured, Black Hills Excavating, Inc. Black Hills was one of G.M.'s subcontractors at the Belfair site. This Policy was in effect from May 5, 2019, to May 5, 2020. Dkt. #31-1 at 3. The Policy includes Commercial General Liability ("CGL") coverage of $1,000,000 per occurrence with a $2,000,000 general aggregate and $2,000,000 products-completed operations aggregate. *Id.* at 6. The Policy also includes Commercial Umbrella Liability Coverage of $5,000,000 per incident with a with a $5,000,000 general aggregate and $5,000,000 products-completed operations aggregate. *Id.* at 17. The Policy identifies the CGL Coverage of this Policy as "underlying insurance" with respect to the Commercial Liability Umbrella Coverage. *Id.* at 18.

The CGL is subject to the "Artisans Advantage Enhanced Coverage Endorsement." *Id.* at 179. Under that Endorsement, an insured is "any person or organization (referred to as an Additional Insured) whom you are required to add as an Additional Insured on this policy under: a. a written contract or agreement; and b. where a certificate of insurance showing the person or organization as an additional insured has been issued; and c. when the written contract

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

or agreement and certificate of insurance are currently in effect or becoming in effect prior to the [injury event]." *Id.* at 198–99. There is also a "Blanket Additional Insured Completed Operations Endorsement," which includes as an insured "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured for completed operations." *Id.* at 217. The Umbrella Coverage requires than an additional insured follow the above requirements. *Id.* at 219.

The tender to Hallmark included a copy of an October 1, 2012, subcontractor agreement between G.M. and Black Hills for demolition, excavation, and installation of sewer lines and other systems at the O'Reilly Store. Importantly, the agreement states:

> E. INSURANCE: Subcontractor agrees to provide a Certificate of Insurance with G.M. Northrup Corporation as "Additional Insured" on a primary and non-contributory basis.
>
> …
>
> G. INDEMNIFICATION: Subcontractor shall indemnify and save harmless the Contractor and its officers and employees, form all claims, loss, damage, injury, costs and expenses of whatsoever any kind or nature (including attorney's fees) however the same may be caused resulting directly or indirectly from the nature of the work covered by the Subcontractor, and without limiting the generality of the foregoing, the same shall include the injury or death of any person or persons and damage to any property, including but not limited to the Owner.

Dkt. #31-2.

### III.   DISCUSSION

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In Washington, the standard for interpreting insurance contracts is well-settled.  *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1104 (W.D. Wash. 2011).  "Interpretation of insurance policies is a question of law and the policy is construed as a whole with the court giving force and effect to each clause in the policy."  *Id*. (citing *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993)).  The words of an insurance policy should be construed according to their ordinary meaning, according to how an average person would read the terms, as opposed to applying any technical interpretation.  *Id*.  If the provisions of an insurance contract are unambiguous and easily comprehended, the intent expressed in the policy will be enforced regardless of the intent of the parties.  *Jeffries v. General Cas. Co. of America*, 46 Wn.2d 543, 283 P.2d 128 (1955).  But if an insurance contract is ambiguous "and fairly

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

susceptible of two different conclusions, the one will be adopted most favorable to the insured." *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 P. 585 (1930).

### B. Analysis

Hallmark's argument is simple: G.M. does not qualify as an additional insured under the Policy because the injury occurred after the construction work was completed and G.M. was not added as an additional insured "for completed operations." G.M. would therefore not be insured by Hallmark and not be entitled to either a defense or indemnity.

G.M. is not a named insured under the 2019 Hallmark Policy. It is clear that G.M. contracted with Black Hills to be added as an additional insured under some insurance policy. The question is whether G.M. is an additional insured under this Policy, issued in 2019.

Hallmark first argues that G.M. cannot qualify as an additional insured under the endorsement for ongoing operations because all the work (and the contract) were completed back in 2012–13, well prior to the 2019 Hallmark Policy. G.M. agrees. *See* Dkt. #35 at 9.

Hallmark next argues G.M. cannot be an additional insured under the endorsement for completed operations because that requires agreement in writing that "such organization be added as an additional insured *for completed operations*" and the subcontractor agreement between G.M. and Black Hills only states "Subcontractor agrees to provide a Certificate of Insurance with G.M. Northrup Corporation as 'Additional Insured' on a primary and non-contributory basis." *See* Dkt. #30 at 22. The magic words "completed operations" are missing. Hallmark indicates G.M. cannot be an additional insured under any other part of the Policy.

In Response, G.M. says that because the agreement between it and Black Hills "*does not limit* the additional insured requirement to only ongoing operations…. [it] necessarily includes additional insured status for *completed operations*." Dkt. #35 at 11 (emphasis in original). This

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

is more of a legal argument than a factual one. G.M. cites to *Pardee Const. Co. v. Ins. Co. of the W.*, 92 Cal. Rptr. 2d 443 (Cal. Ct. App. 2000) and *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 189 P.3d 195, 202 (Wash. Ct. App. 2008) as cases supporting this concept. G.M. points out that the Endorsement at issue does not explicitly require magic words. *Id.* at 13 ("The Endorsement does not state, for example, that the Subcontract must contain the phrase "completed operations."). G.M. argues that any ambiguity must be interpreted in its favor:

> Even if the Endorsement could reasonably be read to require that the Subcontract contain the words "completed operations," it can also reasonably be read to require only that the parties agreed to completed operations coverage, however that agreement is worded. At most, that makes the Endorsement ambiguous and it must therefore be construed in favor of coverage. *Kaplan*, 65 P.3d at 23 ("When an ambiguity in the policy exists, a meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning.").

*Id.*

On Reply, Hallmark argues that the Court cannot ignore the clear language of the insurance contract, and that the cases cited by G.M. are not on point.

The Court agrees with Hallmark. The *Pardee* decision hinged on the insurer's failure to use language expressly excluding completed operations coverage from the additional insured endorsements at issue. The Hallmark Policy language here is clear and unambiguous. G.M.'s interpretation requires the Court to delete words from the Blanket Additional Insured Completed Operations Endorsement. The subcontractor agreement does not mention completed operations coverage, or anything to that effect. *Pardee* and *Hartford* would suggest that it need not mention such for G.M. to qualify as an additional insured for completed operations. These cases help the Court interpret the subcontractor agreement, but not the Policy. This Policy has two separate endorsements, one dealing with ongoing and one with completed operations, and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

the latter explicitly requires an "agree[ment] in writing… [to] be added as an additional insured for completed operations." Because G.M. cannot point to such in the record, it is not an additional insured and Hallmark does not have a duty to defend or to indemnify for the claims in the Underlying Lawsuit.

### IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff Hallmark's Motion for Summary Judgment, Dkt. #30, is GRANTED as stated above.  This case is CLOSED.

DATED this 19th day of July, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE